IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01379-ZLW-MJW

PAUL DESCHAINE,

Plaintiff,

v.

DEBRA ANSHUTZ, PA/NP,
Dr. MCLAUGHLIN, MD, and
DOC MEDICAL,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT (Docket No. 43)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Amended Order of Reference to Magistrate Judge issued by Senior Judge Zita L. Weinshienk on May 8, 2007 (Docket No. 30). Now before the court for recommendation is the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 43). The pro se incarcerated plaintiff has not filed a response to the motion. The court has reviewed the motion, has considered applicable Federal Rules of Civil Procedure and case law, and has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be granted.

**PLAINTIFF'S ALLEGATIONS**

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

In his Prisoner Complaint (Docket No. 3), brought pursuant to 42 U.S.C. § 1983, the pro se plaintiff alleges the following. On February 3, 2005, he went through the Denver Reception & Diagnostic Center ("D.R.D.C.") at which time he went to the medical department for his exam. He tried to inform defendant Anshutz[1] that he was not feeling right, and he explained his symptoms. "[S]he basically just acted like it was all in [plaintiff's] head and sent [plaintiff] on [his] way, down to Buena Vista." (Docket No. 3 at 3). She was not very nice and acted like she did not care what was wrong with plaintiff. She wrote down on plaintiff's medical file only half of what he told her. Plaintiff's blood was drawn at that time, yet she did not see what was wrong with the plaintiff. Her diagnosis of the plaintiff was wrong. (Plaintiff uses the word "malfeance

---

[1] Plaintiff claims defendant Anshutz is a doctor, but defendants state she is a nurse practitioner.

[sic]." Docket No. 3 at 7).

The following weeks, plaintiff felt so much worse that he submitted a "kite" to see a doctor. By the time plaintiff was seen by the doctor, plaintiff was in very bad shape. Plaintiff told the doctor his symptoms, and the doctor immediately seemed to know what was wrong. The doctor ran the appropriate tests, confirmed that plaintiff had diabetes, and had to struggle to get plaintiff's numbers down after it was caught so late. Plaintiff now has to take pills twice a day, went from 20/20 vision to needing a very strong bifocal to see, could lose some or all of his toes, lost a lot of weight, and has neuropathy causing his legs and feet to really hurt. It took months to get his blood sugar even close to normal. Defendant Anshutz and defendant Department of Corrections (DOC) Medical let this happen to plaintiff "through their negligents [sic]." (Docket No. 3 at 5).

Plaintiff was seen by defendant Dr. McLaughlin on October 25, 2005, at which time the doctor wrongfully charged plaintiff with the responsibility for having diabetes, saying it was plaintiff's fault he was sick. Plaintiff asked the doctor about the trouble plaintiff was having with his legs and feet and wanted to know about getting better shoes because the shoes issued by the DOC were inadequate. Plaintiff overheard the doctor ask another patient what size shoes the patient wore and tell that patient that they should be able to accommodate him within ten days. When plaintiff asked about shoes, however, the doctor responded that they cannot buy everyone a pair of shoes and that plaintiff should buy his own. The doctor also stated that since the plaintiff was

participating in the Montez[2] case, "they" could buy them for plaintiff.

At another time (date not specified), plaintiff almost went into insulin shock while he was in the yard. He was returned to his unit, and he told "them" that he needed to go to medical. Medical responded that plaintiff did not need an escort, and when plaintiff arrived at Medical, he was told he had to wait because there was no guard to supervise. Plaintiff waited and waited until he could not longer wait anymore, and he returned to his unit. "The unit" wanted to know why he was back, and he responded that he badly needed to get in his cell so he could get his snack and sugar tablet.

Ever since Dr. McLaughlin said he went to D.R.D.C. to talk with the doctor there, he has not given plaintiff proper care, has denied plaintiff everything, and did not submit plaintiff's paperwork for the Montez case, causing an unspecified denial by the court because the paperwork was not done in a timely manner. Dr. McLaughlin's license was not up to date when he was treating plaintiff. "In conclusion, Dr. McLaughlin was wrong what he said to [plaintiff]. [Plaintiff's] legs and feet hurt very much, [he has] blisters on them because of the shoes DOC has [plaintiff] in and he has denied [plaintiff] help to correct this so [plaintiff's] feet will get better. At this rate they will get infected and could lead to amputation and [plaintiff does] not want that to

---

[2] As correctly noted by defendants (see Docket No. 44 at 3), the Montez case is Montez v. Owens, Civil Action No. 92-cv-00870-EWN-OES, 32 F. Supp.2d 1235 (D. Colo. 1999), a class action against the DOC alleging violations of the Americans with Disabilities Act and Rehabilitation Act. That case was settled in August 2003 when the parties entered into a Remedial Plan which set up a process for individual inmates to file claims for damages. Plaintiff filed such a claim, but it was denied because he was not a member of the class inasmuch as he was not in DOC custody for the first time on or before August 27, 2003, the date Judge Nottingham approved the Remedial Plan. (See Defs.' Ex. A-1; Civil Case No. 92-cv-00870-EWN-OES, Docket No. 2001).

happen. What is wrong with the doctors that DOC medical has working for them. Dr. McLaughlin should stand up to his wrong doing, and take better care of his patients. . . ." (Docket No. 3 at 12-13).

Plaintiff is now seeing a new doctor who is helping plaintiff with his diabetes. Plaintiff receives three insulin shots a day, which he will need the rest of his life because "some doctors are doing some wrong doing." (Docket No. 3 at 11).

Plaintiff also names DOC Medical as a defendant "because It's DOC medicals [sic] responsibility to make sure that the doctors do their job responsibly. DOC medical has let these problems go to [sic] far, and has gone on to [sic] long. DOC medical should be ashamed to have let these kinds of problems happen. . . ." (Docket No. 3 at 14).

Plaintiff raises three claims for relief, namely: (1) "Dr. Anshutz Wrong doing," (2) "Dr. McLaughlins [sic] Wrong doing," and (3) "DOC Medical Wrong doing." Plaintiff seeks monetary relief ($3.5 million, namely, $1.5 million from each of the two individual defendants and $500,000 from DOC Medical), an early parole to Texas, and a copy of this lawsuit put in the doctors' files. (Docket No. 3 at 25).

**<u>DEFENDANTS' MOTION</u>**

In their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) or for summary judgment on claim two (the claim against Dr. McLaughlin) pursuant to Fed. R. Civ. P. 56, and their brief in support thereof (Docket No. 44), defendants Anshutz and McLaughlin seek dismissal of the Complaint in its entirety on the following grounds: (1) plaintiff's allegations of negligence fail to state a cognizable constitutional claim against

Anshutz, (2) plaintiff failed to exhaust his administrative remedies regarding any of his claims against Dr. McLaughlin, (3) plaintiff's allegations fail to show that Dr. McLaughlin consciously disregarded an excessive risk to plaintiff's health or safety, (4) the Complaint fails to state a viable equal protection claim, (5) plaintiff's claim that Dr. McLaughlin made insensitive comments fails to state a claim, (6) defendants Anshutz and McLaughlin are immune from liability, and (7) plaintiff cannot seek early parole through a § 1983 action.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions

on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a

light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

**Claim Against Defendant Anshutz**

The question here is whether the plaintiff's allegations, if true, state a claim under the Eighth Amendment. Kikumura v. Osagie, 461 F.3d 1269, 1291 (10th cir. 2006). Reading plaintiff's Complaint liberally, accepting all factual allegations in the pleading as true, and resolving all reasonable inferences in plaintiff's favor, this court finds that the plaintiff's own allegations show that he is merely raising a claim of negligence or medical malpractice against defendant Anshutz. Plaintiff states in his pleading that tests were done, but Anshutz did not see what was wrong with him and did not properly diagnose plaintiff's diabetes. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 105-06. This court, therefore, finds that in Claim 1 (plaintiff's allegations of "wrong doing" by defendant Anshutz), the plaintiff has not stated a claim of constitutional magnitude. It is thus recommended that Claim1 be dismissed with prejudice.

**Exhaustion of Claim Against Defendant McLaughlin**

Defendants assert that the plaintiff has failed to exhaust his administrative remedies as to his claim against defendant McLaughlin. The Prison Litigation Reform Act of 1995 ("PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to

exhaust "such administrative remedies as are available" before suing over prison conditions. This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth, 532 U.S. at 741, n.6. "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

The Colorado Department of Corrections has a Grievance Procedure available to inmates which entails a formal three-step written grievance procedure. See Administrative Regulation No. 850-04; Defs.' Ex. A-2, DeCesaro Aff. ¶ 3. This court finds that the plaintiff did not exhaust his administrative remedies with regard to his claim against defendant McLaughlin under this standard. According to the Affidavit of Anthony Decesaro (Defs.' Ex. A-2), a Step 3 Grievance Officer of the DOC, after a review of the records of grievances, DeCesaro found a single Step 3 grievance filed by plaintiff in which he stated that he was going forward with a malpractice lawsuit against

Debra Anshutz. DeCesaro has no record of plaintiff filing any other Step 3 grievances, such as one against Dr. McLaughlin or any complaining about the denial of proper shoes.

Attached to the Complaint are plaintiff's Step 1, Step 2, and Step 3 grievances concerning his medical care. Significantly, none of them mention Dr. McLaughlin or plaintiff's medical treatment at Buena Vista Correctional Facility. Instead, they all concern plaintiff's medical exam at the D.R.D.C.[3] Plaintiff has not disputed defendants' argument that he has not exhausted his administrative remedies with respect to his claim against Dr. McLaughlin. Plaintiff did not respond to the defendants' dispositive motion, and earlier in this case, when directed by the court to show cause why the Complaint should not be dismissed for failure to exhaust administrative remedies, plaintiff did not submit copies of any grievances in which he raised his claim concerning medical treatment at Buena Vista Correctional Facility and failed to describe with specificity how he exhausted administrative remedies for that claim. (See Docket No. 13, ruling later vacated due to Supreme Court decision in <u>Jones v. Bock</u>, 127 S. Ct. 910 (2007), See Docket No. 16). Based upon the undisputed affidavit of Anthony DeCesaro and the grievances submitted by plaintiff, the court finds that plaintiff has not exhausted his claim against defendant McLaughlin and thus recommends that such claim be dismissed without prejudice.

---

[3]In an Order filed November 3, 2006, Judge Weinshienk "agree[d] with Magistrate Judge Boland that the grievances attached to the complaint relate only to Mr. Deschaine's claim that he did not receive a proper diagnosis at DRDC and did not raise his claim that he has been denied adequate medical treatment at BVCF." (Docket No. 13 at 3).

**DEFENDANT DOC MEDICAL**

Defendant DOC Medical apparently has not been served. Nevertheless, this defendant is not a "person" amenable to suit under § 1983. Howard v. Department of Corrections, 2007 WL 2914233 (D. Colo. Sept. 28, 2007); Rodriguez v. Denver Sheriffs Dept., 2007 WL 2071669 (D. Colo. July 16, 2007). See Pierce v. Delta County Dep't of Social Servs., 119 F. Supp.2d 1139, 1147-48 (D. Colo. 2000); Collier v. Krane, 763 F. Supp. 473, 478 (D. Colo. 1991). See also Fischer v. Cahill, 474 F.2d 991, 992 (3rd Cir. 1973) (New Jersey Prison Medical Department could not be sued under § 1983 since it is not a person). Therefore this court *sua sponte* recommends dismissal of the plaintiff's claims against this defendant.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 43) be granted, that the plaintiff's claim against defendant Anshutz be dismissed with prejudice, and that the plaintiff's claim against defendant McLaughlin be dismissed without prejudice for failure to exhaust administrative remedies. It is further

**RECOMMENDED** that the court *sua sponte* dismiss the plaintiff's claims against unserved defendant DOC Medical.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive,**

**or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: November 30, 2007       <u>s/ Michael J. Watanabe</u>
       Denver, Colorado           Michael J. Watanabe
                                       United States Magistrate Judge